UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CANDIDA L. VOISINE,                )
                                   )
        *Plaintiff*          )
                                   )
v.                                 )    No. 2:13-cv-412-JAW
                                   )
CAROLYN W. COLVIN,                 )
*Acting Commissioner of Social Security*,  )
                                   )
        *Defendant*          )

# REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff contends that the administrative law judge's residual functional capacity ("RFC") determination is unsupported by substantial evidence, he erred in not according the opinion of her treating rheumatologist, Edward Fels, M.D., controlling or greatest weight, and his credibility determination is unsupported by substantial evidence. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 17) at 9-17. I find no error and, accordingly, recommend that the court affirm the decision.

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of fibromyalgia, obesity, seronegative rheumatoid arthritis, affective disorder, and anxiety disorder, Finding 2, Record at 87; that she retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) and was able to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour workday, stand or walk for six hours in an eight-hour workday, and balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally, was unable to climb ladders, ropes, or scaffolds, should avoid extreme cold, wetness, vibration, and constant forceful gripping and handling, Finding 4, *id.* at 89;[2] that, considering her age (32 years old, defined as a younger individual, on the date that she filed her application for SSI benefits, June 17, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 96; and that she, therefore, had not been disabled since June 17, 2010, Finding 10, *id.* at 97. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

---

[2] I omit mental limitations that the administrative law judge assessed. *See* Finding 4, Record at 89. As the plaintiff's counsel clarified at oral argument, they are not at issue.

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

### I. Discussion

### A. RFC Finding/Credibility Determination

The administrative law judge found, in relevant part, that the plaintiff had severe impairments of fibromyalgia and arthritis that could have caused her claimed symptoms but that her allegations were not credible to the extent inconsistent with the determined RFC. *See* Record at 90. The plaintiff challenges this conclusion in both her first and second points of error, arguing that the administrative law judge's rejection of her ongoing symptoms of pain and tenderness was the basis for his RFC determination and that his credibility analysis was flawed. *See* Statement of Errors at 9-14, 16-17. Because these points of error overlap, I discuss them together.

The plaintiff complains, *see id.* at 10-14, that the administrative law judge erroneously rejected her symptoms of pain and tenderness for reasons set forth in the following two paragraphs:

> Medical records dated December 8, 2010, state that the [plaintiff] had excellent relief of her knee pain following a steroid injection. Treating sources noted on November 2, 2010, that her arthritis had improved a little bit objectively in the past six weeks, and on November 7, 2011, and again on August 2, 2011, that her arthritis had definitely improved with her combination of medications.
>
> While the [plaintiff] has been noted to have low grade synovitis of the proximal interphalangeal joints on some occasions, no synovitis was found during an

3

examination on April 27, 2010. Examiners also reported on August 2, 2011, that she had no active synovitis in the upper extremities, and on May 14, 2012, that her proximal interphalangeal joint synovitis had resolved. Furthermore, impartial medical expert Peter B. Webber, M.D., stated at hearing that while there is an element of synovitis[,] it is not continuous, definitive, or ongoing.

*Id*. at 92 (citations omitted).

The plaintiff contends, in the main, that this discussion failed to factor in her fibromyalgia, to which Dr. Fels attributed most of her symptoms. *See* Statement of Errors at 11. She acknowledges that Dr. Fels concluded that her arthritic symptoms had improved with treatment but points out that, with respect to her fibromyalgia, he continued to record multiple tender points on examination, including tenderness in her shoulders, elbows, wrists, hips, knees, feet, and ankles. *See id*. at 12-14; *see also* Record at 482-83 (note of Nov. 2, 2010), 534-35 (note of Nov. 7, 2011), 536-37 (note of Aug. 2, 2011), 597-98 (note of May 14, 2012). She adds that, with respect to the December 8, 2010, note of orthopedic surgeon Julia Grosvenor, M.D., the administrative law judge omitted Dr. Grosvenor's finding that relief from the steroid injection lasted only one month, after which her burning pain symptoms returned. *See* Statement of Errors at 11; *see also* Record at 435.

The two paragraphs on which the plaintiff focuses pertain primarily, if not entirely, to her arthritis. As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 19) at 3-6, the plaintiff overlooks portions of the decision bearing on fibromyalgia.[3]

---

[3] The administrative law judge's description of the Grosvenor note does leave the misimpression that the plaintiff's knee pain had subsided. However, as the commissioner argues, *see* Opposition at 4, the note as a whole comports with the finding that the knee pain was responding well to treatment. Dr. Grosvenor said as much, and she also noted, *inter alia*, that the plaintiff had full extension and flexion to 120 degrees with no discomfort or instability, *see* Record at 435.

4

As the commissioner observes, *see id.* at 3, the administrative law judge stated that he evaluated the plaintiff's fibromyalgia in accordance with Social Security Ruling 12-2p ("SSR 12-2p"), *see* Record at 91. Pursuant to SSR 12-2p, once a medically determinable impairment of fibromyalgia is established, an adjudicator must "then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2014), at 465. "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms," the adjudicator "consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statement by other people about the person's symptoms." *Id*. Consistent with Social Security Ruling 96-7p, pertaining to credibility determinations, the adjudicator "will make a finding about the credibility of the [claimant's] statements regarding the effects of his or her symptoms on functioning." *Id*.

In keeping with SSR 12-2p, the administrative law judge considered these factors. He noted, for example, that the plaintiff had received only conservative care for her fibromyalgia and arthritis symptoms and, when sent for physical therapy treatment, attended only one appointment and was discharged for failure to attend others. *See* Record at 92. He considered the objective medical evidence of record, noting, *inter alia*, that "medical records fail to document limitation of motion, [or] joint laxity or instability[.]" *Id*. at 91. Finally, he discussed the plaintiff's activities of daily living, which he found contradicted the nature and degree of impairment that she alleged. *See id*. at 94.

At oral argument, the plaintiff's counsel contended that the administrative law judge's discussion of objective medical evidence and activities of daily living did not salvage his credibility determination because the objective medical evidence did not pertain to fibromyalgia or arthritis, and, in assessing activities of daily living, the administrative law judge mischaracterized the function reports on which he relied. As counsel for the commissioner protested, the plaintiff failed to include these points in her statement of errors, thereby waiving them. *See, e.g., Farrin v. Barnhart,* No. 05–144–P–H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

In any event, even taking these arguments into consideration, they are not outcome-determinative. With respect to the administrative law judge's discussion of the objective medical evidence, he acknowledged that the plaintiff's reported symptoms included "chronic fatigue, poor sleep, and widespread muscle and joint pain affecting low back, neck, wrist, shoulder, upper and lower extremities, fingers, hips, left knee[], [and] ankles" and that "[f]indings on examination have included diffuse tenderness, swelling in the left knee, and multiple positive tender points." Record at 91 (citations omitted). However, he went on to list a number of benign or mild objective findings on examination and testing. *See id.* While the plaintiff's counsel contended at oral argument that many of these were irrelevant to fibromyalgia and/or arthritis, he did not address the findings that there was no indication of limitation of motion or joint laxity or instability. Indeed, those findings would seem to bear on what the plaintiff's counsel described as the key issue, the length of time for which the plaintiff could sit, stand, and walk and how often she needed to change positions.

With respect to activities of daily living, the plaintiff's counsel took issue with the administrative law judge's conclusion that function reports completed by the plaintiff and her mother undercut her credibility because they were at "marked odds with the extremely limited activities of daily living" to which the plaintiff testified at hearing. Record at 93. He argued, for instance, that the plaintiff's statements in her function report that she could not sit or stand for long periods and could not bend over, and that pain radiated throughout her whole body, *see id*. at 261, were consistent with both Dr. Fels' findings on examination and his opinion regarding her limitations. He also contended that, in comparing the plaintiff's statements on her function report with her hearing testimony, the administrative law judge omitted significant aspects of the function report, for example, that the plaintiff had difficulty bending over to put on pants, shoes, and socks, had to sit to fold laundry, and could only stand for five minutes doing dishes. *See id*. at 262-63.

Nonetheless, the administrative law judge reasonably deemed some, if not all, details of the function reports at odds with the plaintiff's testimony at hearing, undercutting her credibility. For example, the plaintiff testified that her mother helped her soak her feet because she was unable to reach her feet and toes to wash them, and her mother put on her socks and shoes unless she had slip-ons. *See id*. at 119-20. However, while she and her mother both indicated, in their function reports, that she had difficulty bending to put on pants, shorts, or socks, they did not state that she was unable to do so. *See id*. at 262, 278. In addition, although the plaintiff indicated in her function report that it was hard to stand in the shower and difficult to wash below her hips, she did not state that she was unable to do so, *see id.* at 262, and her mother indicated that she could shower by herself, *see id*. at 278. Although the plaintiff testified that she did not drive because of panic attacks, *see id*. at 111, she and her mother indicated in their function reports that she did drive, *see id*. at 264, 280.

7

In sum, even assuming *arguendo* that some of the bases provided by the administrative law judge for his credibility determination are unsupported by the record, he articulates a number of bases that are. This suffices to survive the applicable deferential standard of review. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Allen v. Astrue*, No. 2:10-cv-35-DBH, 2010 WL 5452123, at *2 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 18, 2011) ("Even assuming *arguendo* that the administrative law judge erred in certain of the cited respects, her thorough and detailed credibility analysis remains supported by specific findings and, hence, entitled to deference.").

### B. Treatment of Treating Source Opinion

The plaintiff next faults the administrative law judge for failing to give controlling or greatest weight to Dr. Fels' July 6, 2012, RFC opinion. *See* Statement of Errors at 14-16. Dr. Fels, who began treating the plaintiff on April 27, 2010, indicated, *inter alia*, that, as a result of her rheumatoid arthritis and fibromyalgia, she would miss more than four days of work per month, would be restricted to part-time work not to exceed two hours per shift, eight to 10 hours per week, could not sit for more than 60 minutes at a time or stand for more than 30 minutes at a time, and would require scheduled breaks more frequently than once every two hours for rest, stretching, and pain relief, and was capable of less than sedentary work. *See* Record at 586-90.

The administrative law judge stated that, while Dr. Fels was the plaintiff's rheumatologist, he accorded his opinion little weight because "the degree of limitations cited is not supported in his contemporaneous treatment records, and appears to be based in large part on the [plaintiff's] subjective assertions[,]" and was "inconsistent with the evidence as a whole, including the

8

testimony of the medical experts at hearing, the State agency medical and psychological consultants['] findings, and the [plaintiff's] reported activities of daily living." *Id*. at 95 (citations omitted).[4] He rejected a similar RFC opinion of the plaintiff's treating primary care physician, William Chernin, M.D., for essentially the same reasons. *See id*. at 94-95.

The administrative law judge acknowledged that Dr. Webber testified that he could not argue with Dr. Fels' opinion, particularly insofar as Dr. Fels concluded that the plaintiff could not maintain regular attendance and be punctual within customary tolerances or consistently complete a normal workday or workweek. *See id*. at 93. However, the administrative law judge gave little weight to the Webber RFC opinion "as he based his conclusions in part on the [plaintiff's] testimony, which the undersigned does not find fully credible." *Id*.

The administrative law judge gave great weight to a March 15, 2011, RFC opinion of state agency nonexamining expert Donald Trumbull, M.D., which he deemed well-supported and consistent with the record as a whole. *See id*. at 95, 467-69.

The plaintiff contends that the administrative law judge erroneously declined to accord controlling or greatest weight to the Fels opinion, given Dr. Fels' status as her treating rheumatologist and the consistency of his opinion not only with his own contemporaneous treating records but also with other evidence of record, including Dr. Webber's testimony. *See* Statement of Errors at 16. I find no error.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and

---

[4] As the commissioner acknowledges, *see* Opposition at 7 n.2, the administrative law judge erred in describing the Fels opinion as inconsistent with the testimony of the medical experts at hearing. In fact, as the administrative law judge elsewhere acknowledged, the testimony of medical expert Peter B. Webber, M.D., was not inconsistent with Dr. Fels' opinion. *See* Record at 93. Nothing turns on the error, which is rectified in the administrative law judge's discussion of the Webber opinion.

9

laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F .R. § 416.927(c)(2).[5] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06–14–B–W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

Dr. Fels' repeated findings of tender points, consistent with his fibromyalgia diagnosis, did not in themselves oblige the administrative law judge to accord the Fels opinion controlling or greatest weight. The administrative law judge supportably found the opinion inconsistent with other substantial evidence of record discussed above. He also made clear that he rejected the Webber opinion because it was based, at least in part, on Dr. Webber's assumption that the plaintiff's testimony was credible, with which he disagreed. *See* Record at 93, 155. As the commissioner notes, *see* Opposition at 10, in such circumstances, this court has found no error in the rejection of a medical expert's testimony endorsing a treating source's opinion, *see Bailey v.*

---

[5] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. § 416.927(c).

*Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *4 (D. Me. Jan. 29, 2014) (concluding that administrative law judge did not err in rejecting medical expert's opinion that allegedly "aligned with" that of treating source when expert's opinion was based, in part, on the plaintiff's hearing testimony; observing, "The administrative law judge is tasked to evaluate the credibility of a claimant's testimony at hearing.").

At oral argument, in response to a question that I posed, the plaintiff's counsel contended that the Trumbull RFC opinion could not serve as substantial evidence of the plaintiff's RFC given that, unlike Dr. Webber, Dr. Trumbull did not have the benefit of the opportunity to hear the plaintiff's testimony and ask her clarifying questions. Counsel for the commissioner objected that the plaintiff had not made this argument in her statement of errors, thereby waiving it. His point is well-taken. *See, e.g., Farrin,* 2006 WL 549376, at *5. In any event, even taking it into consideration, it is not outcome-determinative. This court rejected a similar argument in *Bailey*, observing, "[I]f the fact that a claimant and/or a medical expert testified at a hearing, a fact that would only arise after a state-agency reviewer had completed his or her written evaluation, would invalidate that evaluation, the evaluation would be an empty exercise." *Bailey*, 2014 WL 334480, at *2.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 27th day of September, 2014.

                                                  <u>/s/  John H. Rich III</u>
                                                John H. Rich III
                                                United States Magistrate Judge